Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 8028 | **DATE** | 9/15/2003 |
| **CASE TITLE** | Dillard vs. Chicago Transit Authority | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER. Chicago Transit Authority's motion for summary judgment [15-1] is granted. Defendant's motion to strike plaintiff's documents in response to motion for summary judgment [26-1] is granted to the extent described in this court's opinion. Case terminated.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | SEP 1 6 2003 date docketed | |
| ✓ | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | | 32 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT | | |
| RJ/lv | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JOHN DILLARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 00 C 8028 |
| v. | ) | |
| | ) | Judge Joan B. Gottschall |
| CHICAGO TRANSIT AUTHORITY, | ) | |
| | ) | |
| Defendant. | ) | |

SEP 16 2003

## MEMORANDUM OPINION AND ORDER

Plaintiff John Dillard filed suit against his employer, Chicago Transit Authority ("CTA") under Title VII of the Civil Rights Act of 1964. Currently before the court is the CTA's motion for summary judgment. For the reasons explained below, the CTA's motion is granted.

### Background

John Dillard has been employed by the CTA since August 1994. In his single count complaint, Dillard asserts that the CTA violated Title VII by discriminating against him on the basis of his race, African American, and by retaliating against him for filing charges of discrimination with the CTA on May 25, 2000 and with the EEOC on June 20, 2000. Dillard argues that the CTA failed to promote him to General Manager, Quality Assurance in November 1999 and to Lead Manager, Receiving and Management in 2000. In addition, Dillard argues that the CTA took a number of actions against him in retaliation for his filing a discrimination charge with the CTA.

## Analysis

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, the court must view the record and any inferences to be drawn from it in the light most favorable to the party opposing summary judgment. *See Griffin v. Thomas*, 929 F.2d 1210, 1212 (7th Cir. 1991). The party opposing summary judgment may not rest upon the pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is no genuine issue for trial unless there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Id.* The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**Dillard's Pre-August 24, 1999 Claims Are Untimely**

Dillard filed his EEOC charge on June 20, 2000. The CTA argues that any alleged Title VII violations that occurred more than 300 days prior to June 20, 2000 (*i.e.*, before August 24, 1999) are time-barred. In response, Dillard argues that any pre-August 24, 1999 events may be considered as part of a continuing violation theory.

In light of the Supreme Court's recent decision in *National Railroad Passenger Corp. v. Morgan*, 122 S. Ct. 2061 (2001), the court concludes that events that occurred more than 300 days prior to the filing of the EEOC charge are time-barred. In that case, the Supreme Court held that a plaintiff, in proving a hostile work environment claim, may rely upon events that occurred

2

beyond the 300-day period in order to show a continuing violation. In contrast to a case involving a hostile work environment claim, the court stated that:

> Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'

*Id.* at 2073. "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 2066. Here, plaintiff does not allege a hostile working environment, but rather a series of discrete events that he claims were taken because of his race. Therefore, any discrete acts that occurred prior to August 24, 1999 are barred.

**Disparate Treatment**[1]

Dillard alleges that he was denied certain promotions because of his race. It is undisputed that Dillard does not have any direct evidence that any of the employment decisions made by the CTA were discriminatory. In the absence of direct evidence, Dillard may avoid summary judgment by relying on the *McDonnell-Douglas* burden shifting framework. *See Gordon v. United Airlines, Inc.*, 246 F.3d 878, 885-86 (7th Cir. 2001). "To establish a *prima facie* case of race discrimination in a failure to promote context, the plaintiff must show: (1) [he] is a member

---

[1]Defendant's motion to strike plaintiff's documents in response to defendant's motion for summary judgment is granted to the extent described herein. The court agrees that plaintiff's statements of additional fact which rely on Exhibit B of plaintiff's Corrected Local Rule 56.1(b)(3) statement for support must be stricken. Exhibit B is plaintiff's response to defendant's first set of interrogatories which includes various documents (none of which were authenticated) as exhibits. The court concludes that the interrogatory answers and the attached exhibits are not admissible since they are not based on personal knowledge and are hearsay. *Duff v. Lobdell-Emery Mfg Co.*, 926 F. Supp. 799, 803 (N.D. Ind. 1996) (party's own answers to interrogatories not admissible for purposes of summary judgment); *Henderson v. Handy*, No. 94 C 0055, 1996 WL 148040, *4 (N.D. Ill. Mar. 29, 1996) (same).

3

of a protected group; (2) [he] was qualified for the position sought; (3) [he] was rejected for the position; and (4) the employee promoted was not a member of the protected group and was not better qualified than the plaintiff." *Johnson v. Nordstrom Inc.*, 260 F.3d 727, 732 (7th Cir. 2001). Once Dillard has established a *prima facie* case of discrimination, the burden shifts to the CTA to articulate a legitimate, non-discriminatory reason for the action. *Id.* Once the CTA has articulated a legitimate nondiscriminatory reason, the burden then shifts back to Dillard to demonstrate a genuine issue of material fact as to whether the CTA's reason is pretextual.

Because any events that occurred prior to August 24, 1999 are time-barred, Dillard is left with two claims relating to failure to promote based on the positions of General Manager, Quality Assurance ("General Manager") and Lead Manager, Receiving and Management ("Lead Manager"). With respect to the General Manager position, the CTA argues that Dillard has failed to establish a *prima facie* case by failing to show that he was qualified for the position of General Manager and by failing to present facts that the employee who was promoted, John Kurtovich, was not better qualified than Dillard. While Dillard is indisputably a member of a protected group and did not receive the promotion to General Manager, Dillard has failed to put forward any evidence that he was qualified for the promotion or that Kurtovich was less qualified than Dillard. The only evidence in the record supports the CTA's argument that Kurtovich received the job of General Manager because he was the most qualified. The position required familiarity with union labor contracts, knowledge of the CTA's personnel practices and procedures, a bachelor's degree in business administration, experience and managerial and organizational skills. Because Dillard fails to point the court to any evidence that suggests that he had those requirements, and that Kurtovich did not, no reasonable jury could conclude that

4

elements 2 (that Dillard was qualified for the position) and 4 (that Kurtovich was not better qualified than Dillard) were met.

With respect to the Lead Manager position, the CTA argues that Dillard failed to satisfy his *prima facie* burden because Dillard voluntarily withdrew his application for the position and twice refused the opportunity to interview for the job. One obvious pre-condition to being qualified for any promotion is to apply for it. *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1118 (7th Cir. 1992). Dillard submitted an application for the position of Lead Manager. Dillard, however, did not interview for the position because he was informed of the interview on the day of the interview (also the day of a snowstorm) and could not attend. Dillard withdrew his application for the position and declined subsequent offers to interview for the position on less short notice. In light of this, the court finds that Dillard has failed to show that he was qualified for the position.

Defendant's motion for summary judgment on the disparate treatment claim is granted.

**Retaliation**

It is undisputed that Dillard seeks to prove his retaliation claim through an indirect method of proof. Therefore, Dillard must show that: "[he] engaged in statutorily protected activity; (2) [he] performed [his] job according to [his] employer's legitimate expectations; (3) despite [his] satisfactory performance, [he] suffered an adverse employment action; and (4) [he] was treated less favorably than similarly situated employees who did not engage in statutorily protected activity." *Haywood v. Lucent Tech., Inc.*, 323 F.3d 524, 531 (7th Cir. 2003) (citing *Stone v. City of Indianapolis Public Util. Div.*, 281 F.3d 640 (7th Cir. 2002)). Under this method, Dillard need not show "'even an attenuated causal link.'" *Id.* (quoting *Stone*, 281 F.3d at

644). Once the plaintiff establishes these four elements, the burden shifts to the defendant to "come forward with a legitimate, non-invidious reason for the adverse employment action." *Id.* Once the defendant puts forward a legitimate reason for the adverse employment action, the burden shifts back to the plaintiff to show that the defendant's reason is pretextual. *Id.*

**Promotions**

Plaintiff alleges that he was passed over for three promotions[2] in retaliation for his filing a discrimination charge. The CTA argues that Dillard's retaliation claim fails with respect to these promotions because he cannot show he was qualified for two of the positions and he did not apply for the third. With respect to two of the promotions, Dillard has not shown that he was "similarly situated" to the individuals who ultimately received the promotions at issue. The undisputed evidence shows that the two promoted individuals were qualified for each respective position, while Dillard was not. Dillard has failed to show that he had the requisite experience for the positions of General Manager, Engineering and Technical Services (extensive experience in automotive vehicle engineering, maintenance and design work) and Manager, Administrative Services (property management experience). While Dillard asserts that the CTA doctored the job description for General Manager, Engineering and Technical Services to specifically exclude him from eligibility, he presents no evidence (not even his own deposition testimony or affidavit) to support this. In addition, Dillard does not dispute that Mary L. Clements was chosen for the position of Manager, Administrative Services based on her extensive property management

---

[2]The CTA includes a fourth promotion for the position of General Manger, Customer Service as a basis for Dillard's retaliation claim. However, in responding to the CTA's Local Rule 56.1 statements, Dillard makes clear that the loss of this promotion is not part of his retaliation claim. Even if it were, however, it would fail because it is undisputed that Dillard was not qualified for the position.

6

experience as compared with other applicants, including Dillard. Without evidence establishing that Dillard was qualified for the promotions, and that the individuals who ultimately received the positions were not, Dillard's claim fails with respect to these two promotions.

With respect to the third lost promotion to the position of Manager, Specification Engineering and Inspection, for which Dillard did not even submit an application for the job per the instructions on the position posting sheet, the court concludes that Dillard also fails to prove his *prima facie* case. A necessary prerequisite in a failure to promote claim, whether based on discrimination or retaliation, is that the plaintiff actually applied for the promotion. Because Dillard did not follow the proper posting procedure to apply for the position of Manager, Specification Engineering and Inspection, his retaliation claim based on this lost promotion also fails.

Dillard also maintains that the CTA took other types of actions against him in retaliation for his filing a charge of discrimination.

**Transfer To, And Conditions Of, The 901 Facility**

On May 24, 2000, Kurtovich, Dillard's supervisor, informed Dillard of the possibility that Dillard's section would be transferred from the Merchandise Mart to the CTA's facility at 901 W. Division ("901 facility"). The following day, May 25, 2000, Dillard filed a charge of discrimination with the CTA's Affirmative Action Department. Dillard claims that the CTA transferred Dillard's department from one facility to another in retaliation for his having filed a discrimination complaint. It is undisputed that the decision to transfer Dillard's department was made *prior to* his engaging in protected activity. Because Dillard did not engage in any protected activity prior to the decision to transfer, he cannot allege retaliation. In addition, even if this

7

were not the case, the transfer does not constitute a materially adverse employment action because it is undisputed that Dillard maintained the same managerial position after the move. *See Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 135-36 (7th Cir. 1993) (finding that a transfer was not an adverse employment action where employee maintained same management level and same salary and benefits). Finally, even assuming for the moment that the transfer could be deemed an adverse employment action, Dillard has failed to show that a reasonable trier of fact could infer that the CTA's stated reason – bringing all the departments under Kurtovich's supervision together – was pretext. Therefore, Dillard's retaliation claim related to the department transfer fails.

With respect to his working conditions at the 901 facility, Dillard claims that the following constitute adverse employments actions[3] taken against him by the CTA: (1) he cannot interview applicants for his department; (2) he reported to persons with less departmental seniority; (3) his staff has been reduced to zero; (4) he does not have desk or office keys; (5) he lacks an outside telephone line; (6) his office blinds were missing; (7) his office lacked carpeting; (8) he must sign in and out for lunch; (9) he must dock the pay of late workers; (10) his access to other work areas was limited; (11) his non-work related conversations were limited; (12) Kurtovich reviews his requests for vacation; (13) Kurtovich gave Dillard's staff and secretary direct assignments; (14) Kurtovich edits and reviews Dillard's work product; (15) Dillard was

---

[3]The CTA points out that a number of Dillard's complaints related to his supervision by Kurtovich. Kurtovich became Dillard's supervisor in November 1999, six months prior to Dillard's filing of a charge with the CTA. Unfortunately, there is no evidence on either side that establishes whether or not Kurtovich's management style was already in effect at the time of Dillard's charge. The court, therefore, will take this in the light most favorable to Dillard and assume that those complaints relating to Kurtovich's management style came into existence after the filing of the charge.

not left in charge during Kurtovich's absences; (16) he is supervised by Kurtovich, who is a "hard guy" to work for.

For many of his complaints, Dillard simply fails to show that he was treated "less favorably" than those similarly-situated in his department because the conditions he complains of were imposed on those either similarly-situated to Dillard or those above him in the management chain. For example, it is undisputed that: others in Dillard's department, including those above Dillard in the management hierarchy, lacked keys to offices and desks; Dillard's entire department is supervised by Kurtovich; Dillard's supervisors did not have carpeting in their offices; all employees under Kurtovich's supervision sign in and out for lunch; Kurtovich reviews and edits the letters and memoranda of all three managers under him, including Dillard; Kurtovich interviews applicants for all vacancies under all three managers under him, including Dillard; Kurtovich requires all three managers under him, including Dillard, to dock workers when they are late. With respect to Dillard's assertion that he has no telephone line with which to make outside calls, the undisputed evidence shows that he does have such a line. Finally, it is undisputed that Kurtovich reviews and decides all vacation requests by the three managers below him. With respect to an incident in December 1999, in which Kurtovich denied Dillard's request for vacation time, it is undisputed that the department was short-staffed at the time and that Kurtovich had no knowledge of Dillard's charge of discrimination at the time he denied Dillard's request for vacation.[4] Dillard has failed to put forward any evidence that would allow a

---

[4]Dillard provides no evidence to counter the CTA's evidence that Kurtovich had no knowledge of the charge. The only evidence pointed to by Dillard is his own deposition testimony which states that knowledge of his *lawsuit* was "out there," which clearly establishes nothing about whether or not Kurtovich knew of the internal charge.

9

reasonable trier of fact to infer that the CTA's reason was merely pretext. In light of this, a reasonable jury could not conclude that Dillard was retaliated against when the conditions listed above were applied to those similarly situated to him and even applied to those above him in some circumstances.

There are also a number of items that Dillard admits were rectified as soon as he brought them to Kurtovich's attention. For example, while Dillard's office did not have blinds when he first arrived at the 901 facility, it is undisputed that the missing blinds were soon found and installed in Dillard's office. Likewise, after the transfer, Dillard found that his identification card did not allow him access to certain parts of the 901 facility. It is undisputed that after he brought this to Kurtovich's attention, Kurtovich immediately corrected the problem by giving Dillard the access he needed. Although it appears that Kurtovich used to ask Dillard's secretary to run reports, it is undisputed that Kurtovich no longer does this. Also, while Dillard believed that he was subject to a rule that only conversations about work were allowed at the 901 facility, it is undisputed that that rule is no longer in effect. Finally, while Dillard argues that Kurtovich did not leave Dillard in charge while Kurtovich was out of the office, it is undisputed that Kurtovich now does leave Dillard in charge.

Even for the period of time before the above items were remedied, Dillard's claim fails because none of the items, individually or collectively, constitute a materially adverse employment action. In order to show that a certain action is a materially adverse employment action, "[a]t minimum, the employee must be able to show a quantitative or qualitative change in the terms or conditions of employment." *Haywood*, 323 F.3d at 532. "A materially adverse change might be indicated by a termination in employment, a demotion evidenced by a decrease

10

in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Crady*, 993 F.2d at 136 (citations omitted). Though the term is interpreted broadly in this circuit, "not everything that makes an employee unhappy is an actionable adverse action." *Smart v. Ball State Univ.*, 89 F.3d 437, 441-42 (7th Cir. 1996). The court concludes that none of the actions listed above are significant enough to have had any tangible, negative impact on Dillard's employment. For this reason, Dillard's retaliation claim based on the above actions fails.

Finally, there are a few additional acts that Dillard alleges are retaliatory. Dillard asserts that in retaliation for filing a charge of discrimination, Kurtovich gave him negative performance reviews. The only evidence before the court is the CTA's undisputed assertion that Dillard received a poor evaluation because his department had a large backlog of invoices about which Dillard never informed Kurtovich. It is also undisputed that Kurtovich had no knowledge of Dillard's charge at the time he gave Dillard his review. Even if Dillard could show that he received a negative evaluation in retaliation for filing a charge of discrimination, "unfair reprimands or negative performance evaluations, unaccompanied by some tangible job consequence, do not constitute adverse employment actions," *Grube v. Lau Indus., Inc.*, 257 F.3d 723, 729-30 (7th Cir. 2001), and Dillard has not shown that these evaluations negatively effected his advancement. Finally, Dillard maintains that his staff has been reduced to zero. Despite his assertion otherwise, the undisputed evidence shows that Dillard's department is fully staffed.[5] Also, Dillard alleges that it was retaliatory for the CTA to require that Dillard report to Robert

---

[5]The CTA also addressed Dillard's allegation that he was required to process invoices. Dillard, however, does not argue that requiring him to process invoices was retaliatory; he admits that this is part of his job.

11

Conlin (when Conlin held the position of General Manager on a temporary basis) who had less seniority than Dillard. Dillard presents no evidence to support this assertion.

Defendant's motion for summary judgment on Dillard's retaliation claim is granted.

ENTER:

_____
JOAN B. GOTTSCHALL
United States District Judge

DATE: September 15, 2003